NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0239n.06ID

Case No. 20-1644

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 13, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|  | ) | |
| Plaintiff - Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| ANTAWAN WILLIAMS, | ) | WESTERN DISTRICT OF MICHIGAN |
|  | ) | |
| Defendant - Appellant. | ) | |
|  | ) | |

BEFORE: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Antawan Williams contests the procedural and substantive reasonableness of his 72-month sentence for possession of fentanyl with intent to distribute, a 15-month variance above the sentencing guidelines range. Because the district court did not abuse its discretion in selecting the sentence, we affirm.

I.

Police arrested Antawan Williams in 2019 and found cash and drugs on his person. When tested, the drugs turned out to be fentanyl and other controlled substances. In Williams's apartment, police found digital scales with cocaine residue, narcotics packaging, cash, three firearms (at least one of which was loaded), and ammunition. Williams was charged with possession of fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Williams agreed to plead guilty in exchange for the government's agreement to dismiss

the firearms count. However, the plea agreement stated that the district court could consider the dismissed count in sentencing, including when determining "the propriety of any departure from the calculated guidelines range." DE 42, Plea Agmt., Page ID 111.

The presentence report determined that Williams's offense level was 26 and his criminal history category was VI. His criminal history included two state convictions for possessing firearms as a felon, various drug convictions, and probation and parole violations. Williams objected to the offense level calculation, arguing that there was insufficient evidence to sustain enhancements for cocaine possession and maintaining a drug house. The district court sustained both objections and granted a two-level reduction for acceptance of responsibility. The recalculated offense level was 16, yielding a recommended sentencing range of 46 to 57 months.

Before allocution, the district court said that "even though those are the guideline rulings and that is now the place we start," it questioned "whether that fairly represents the overall seriousness of the offense conduct . . . particularly related to the firearms." DE 65, Sent. Tr., Page ID 424. In the court's "view[,] the firearms associated with this offense and the possession of those things by Mr. Williams is much more serious than the provable activity on the drugs." *Id*. The district court noted that the recommended sentencing range for the dismissed firearms count given Williams's criminal history would have been 100 to 125 months, and while that was "[c]leary not the guideline range," it was "one of the ways" the district court would measure "the overall seriousness of the [drug] offense, which is one of the 3553 factors." *Id*. at 425.

Defense counsel argued that the district court should grant a downward variance for numerous reasons: (1) the government unfairly refused to move for a third point reduction for acceptance of responsibility; (2) Williams believed he possessed heroin, not fentanyl; (3) Williams's criminal history was a category VI "by one point"; (4) he was on parole for only

part of the time of the offense; (5) Williams "had a somewhat troubled life," including problems with substance abuse; (6) he had a good employment history; and (7) he desired to provide care for his young child who had sickle cell disorder and whose mother also had health problems. Williams spoke and apologized to the court for his actions. He also asked the district court to consider the time he had already spent in prison or to delay the imposition of his sentence until after the mother of his child recovered from a medical procedure. The government urged the court to deny the request for a downward variance and to consider all relevant conduct, including the firearms possession, when determining the sentence.

In selecting the appropriate sentence, the district court stated that its two primary considerations were "the overall seriousness of the offense, particularly the firearms conduct" and "the repetitive nature of Mr. Williams'[s] law breaking." *Id*. at 439. The court said that the record was not clear as to whether Williams's drug activity was "much more extensive than you could account for just on the drugs located on Mr. Williams'[s] person," or whether "it was a more limited dealing triggered at least in part by Mr. Williams'[s] own substance-abuse issues." *Id*. The district court noted that Williams did not "have a prior drug-distribution conviction for the kinds of drugs involved here." *Id*. at 440.

The district court pointed out that this was the third time that Williams had been caught with firearms as a convicted felon, behavior the district court viewed as "escalating" given that one of the firearms found in the search was stolen and another was a semiautomatic with a large-capacity magazine. *Id*. at 440–41. The district court also noted that Williams kept the firearms in a house he shared with his then-pregnant girlfriend, which was "a recipe for trouble and serious danger and even death." *Id*. at 440.

The district court also considered Williams's criminal history, stating that it was a "serious concern" that the message that Williams could not possess firearms had not "gotten through." *Id.* The district court said that the criminal history score was category VI "because of the series of violations," including "[v]iolations while on parole or on supervision for other criminal convictions." *Id.* at 441. The district court decided against a downward variance based on that history. *Id.*

The district court reiterated that it felt that "the overall seriousness of what happened here" was not reflected in the 46- to 57-month range, stating that it intended to vary upward. *Id.* at 442. In determining the sentence, the district court stated that it thought that "the government [wa]s being a little stingy on the third point" for acceptance of responsibility and would take that into consideration, balanced against "the seriousness of the comparative gun activity and the repetitive violations on probation and on parole." *Id.* at 443. The court also stated that the drug activity did not drive "the overall seriousness of the provable offense conduct." *Id.* In the court's view, an upward variance was needed

> for Mr. Williams to get the message finally that if he wants to live that life in the community that we all hope for him, work in a law-abiding job, which he's obviously capable of doing, he's demonstrated that, use the intelligence he obviously has, whether in construction or something else, get a job that can, you know, carry insurance so that he can take care of the undoubted medical problems that sadly will accompany his daughter's life with sickle cell, that's a painful and difficult condition, those are things that he can do.

*Id.* at 442. The district court determined that when "put[ting] it all together, the factors that are for and against Mr. Williams, . . . a guideline sentence here . . . would be too low," but "a sentence of 72 months custody . . . is a fair reflection of the overall offense conduct including the relevant conduct of the firearms associated with the offense," which the court viewed as "the most serious

conduct in the case." *Id*. at 443. The district court declined to allow Williams to self-surrender on a future date because he was already in custody for parole violations.

Defense counsel did not object to the sentence when prompted by the district court, but toward the end of the hearing Williams said that he felt that the sentence was "unfair" because the guidelines range already accounted for his criminal history. *Id*. at 450. The district court replied that it had explained its reasons for the sentence and did not "need to add to the record," but that Williams could address the sentence on appeal. *Id*. Williams then filed a timely notice of appeal.

II.

On appeal, Williams contests the procedural and substantive reasonableness of his sentence. "We determine reasonableness under the deferential abuse-of-discretion standard." *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012) (citing *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012)). The government argues that we should review the sentence instead for plain error because Williams failed to object to the sentence before the district court. Although the government is correct that Williams did not object at the first opportunity, he did inform the district court that he thought his sentence was "unfair" because much of the conduct justifying the variance was already counted in his guidelines range. We need not decide whether this statement can be read as objecting to the reasonableness of the sentence, however, because Williams's arguments fail under even the more forgiving abuse of discretion standard. For the reasons we discuss, Williams's sentence was both procedurally and substantively reasonable.

A.

"[I]n reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and

(3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). "If the district judge decides to depart from the advisory Guidelines range, 'he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* at 580 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "Likewise, the record must contain the district court's rationale for concluding that the sentence imposed is 'sufficient but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)." *Id.* While "[t]he record must reflect that the district court considered all of the § 3553(a) factors," "the district court need not explicitly reference each of the § 3553(a) factors in a ritualistic incantation." *United States v. Wallace*, 832 F. App'x 949, 954 (6th Cir. 2020) (internal citations and quotations omitted).

Williams argues that the district court "never explained its reasons for the specific sentence it imposed." CA6 R. 15, Appellant's Br., at 19. But that argument is belied by the record. Before allocution, the court stated that it might vary upward from the guidelines range because the court doubted that the range "fairly represents the overall seriousness of the offense conduct . . . particularly related to the firearms." DE 65, Sent. Tr., Page ID 424. The district court gave the government and Williams an opportunity to explain their positions on the appropriate sentence, and then the court reiterated that it felt the guidelines range did not reflect "the overall seriousness of what happened." *Id.* at 442. The court explained that its two primary considerations were "the overall seriousness of the offense, particularly the firearms conduct" and "the repetitive nature of Mr. Williams'[s] law breaking." *Id.* at 439. The court stated that it was a "serious concern" that the message that Williams could not possess firearms had not "gotten through." *Id.* at 440. The

court viewed the firearms conduct as "escalating" in light of his prior firearms convictions and particularly dangerous given that his then-pregnant girlfriend lived in the house (and his child lives there now as well). *Id*. at 440–41. The court also pointed out that Williams's criminal history was category VI, the highest possible level, "because of [a] series of violations, including . . . [v]iolations while on parole or on supervision for other criminal convictions." *Id*. at 441.

The district court also considered mitigating factors that meant that the sentence did not need to be as high as it "would be if the gun conviction had been the scored one." *Id*. at 442. The court said that it would consider its belief that "the government [wa]s being a little stingy on the third point" for acceptance of responsibility, as well as Williams's substance-abuse issues, the fact that Williams did not "have a prior drug-distribution conviction for the kinds of drugs involved here," and his need to care for his daughter. *Id*. at 440, 442–43.

The district court determined that when "put[ting] it all together, the factors that are for and against Mr. Williams, . . . a guideline sentence here . . . would be too low," but "a sentence of 72 months custody . . . is a fair reflection of the overall offense conduct including the relevant conduct of the firearms associated with the offense," which the court viewed as "the most serious conduct in the case." *Id*. at 443.

"In short, as required by our procedural reasonableness jurisprudence, the district court engaged in its own evaluation of the § 3553(a) factors and utilized its discretion to vary from the Sentencing Commission's recommendations." *Bolds*, 511 F.3d at 582. Given "the district court's careful consideration of the § 3553(a) factors and thorough explanation of its reasons for imposing a [72] month sentence, we do not consider [Williams's] sentence to violate the requirements of procedural reasonableness." *Id*.

B.

"Sentences imposed within a properly-calculated Guidelines range enjoy a rebuttable presumption of substantive reasonableness on appeal." *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009). But "[a]t the same time, a sentence falling outside the guidelines range is not presumptively unreasonable." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). We have held that a sentence may be substantively unreasonable when the district court selects it "arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* Generally, "we must give 'due deference' to the district court's conclusion that the sentence imposed is warranted," and the fact that we "might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 522 U.S. at 51).

Williams argues that the district court inappropriately considered his criminal history in granting an upward variance, which he says was already factored into the sentencing guidelines. "At the outset, we note that members of our Court disagree over whether challenging the district court's consideration of an improper factor is a substantive or procedural challenge." *United States v. Fowler*, 956 F.3d 431, 440 n.1 (6th Cir. 2020) (collecting cases). But whether this issue is procedural or substantive, "our case law permits a sentencing court to consider a defendant's criminal history in its analysis of the 18 U.S.C. § 3553(a) factors, even when the defendant's guidelines range already reflects it." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020).

The circumstances in which we have cautioned against "double counting" a defendant's criminal history are not present here. For instance, we held that the upward variance in *Lee* was an abuse of discretion because it "nearly doubled" the defendant's sentence, and there was no

"meaningful relationship between the offense of conviction and the defendant's alleged likelihood of reoffending" because the defendant had no prior firearms convictions. *Id*. By contrast, the variance here was about 25 percent above the top end of the guidelines range. And unlike the defendant in *Lee*, Williams had two prior firearms convictions. The district court was also concerned that Williams's conduct was part of an "escalating" pattern because the instant case involved multiple firearms, one of which was a "semiautomatic with a large-capacity magazine," and one of which was stolen. DE 65, Sent. Tr., Page ID 440–41.

We upheld a near-identical variance in *United States v. Arnold*, 838 F. App'x 985 (6th Cir. 2021). There, the recommended guidelines range for the drug offenses at issue was also 46 to 57 months. *Id*. at 986. The district court likewise sentenced the defendant to 72 months' imprisonment, an upward variance of 15 months. *Id*. We concluded that the sentence was substantively reasonable because the district court determined that it was necessary "to 'protect the public from Mr. Arnold dealing more drugs' and that he 'seems to keep doing the same thing that lands him in this court.'" *Id*. at 989. Likewise, the district court here stated that it was a "serious concern" that the message that Williams could not possess firearms had not "gotten through," and an upward variance was necessary for "Williams to get the message." DE 65, Sent. Tr., Page ID 440, 442.

Williams also argues that the district court gave "excessive weight" to the firearms possession, which he says "presented no significant danger." CA6 R. 15, Appellant's Br., at 12–14. He argues that the government did not view the firearms possession as particularly dangerous because the government agreed to dismiss the firearms charge in the plea agreement. But the district court determined that the firearms presented a "serious danger" based on the type of one of the weapons, the fact that at least one was loaded, and the presence of the firearms in a home

with Williams's girlfriend. DE 65, Sent. Tr., Page ID 440. We have no basis for disturbing those factual findings. Additionally, it was clear from the plea agreement that the district court would be permitted to consider the firearms conduct in crafting a sentence, including "the propriety of any departure from the calculated guidelines range." DE 42, Plea Agmt., Page ID 111. The district court did not unduly weigh the firearms conduct in applying a 15-month variance.

III.

The sentence imposed by the district court was both procedurally and substantively reasonable. We therefore affirm.